## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Benjamin Cipes                    :
                                  :
v.                                :        No. 3:04cv1412 (JBA)
                                  :
Trooper K. Graham (#735)          :

### Ruling on Motion to Dismiss [Doc. # 13]

Plaintiff's suit, brought under 42 U.S.C. § 1983, challenges the defendant's nighttime execution of a misdemeanor arrest warrant in his home without exigent circumstances as an unreasonable seizure under the Fourth Amendment. Defendant Trooper Keith Graham, an officer with the Connecticut State Police, has moved to dismiss the complaint on qualified immunity grounds. Although the Court concludes that such conduct violated the plaintiff's constitutional right against unreasonable seizure, it further finds that this right was not clearly established at the time and defendant is thus entitled to qualified immunity. Accordingly, defendant's motion to dismiss [Doc. # 13] is GRANTED.

### I.   Factual Background Drawn from the Complaint

On or about March 20, 2002, an arrest warrant was issued, charging the plaintiff with the misdemeanor offense of "Failure to appear in the second degree," Conn. Gen. Stat. § 53a-173, for his non-appearance in court on a prior misdemeanor charge of "Criminal mischief in the second degree," Conn. Gen. Stat. § 53a-

1

116.  <u>See</u> Arrest Warrant and Application [Doc. # 19].  The warrant set bond in the amount of five hundred dollars ($500). <u>Id</u>.  Shortly thereafter, the defendant directed that the plaintiff be arrested "literally in the middle of the night" in the house where plaintiff resided with his mother.  Complaint [Doc. # 1] at ¶ 9.  Plaintiff was "rousted" out of bed, cuffed and held at the police facility.  <u>Id</u>.  The plaintiff alleges that there were no exigent circumstances necessitating this nighttime arrest and thus the defendant's conduct caused the plaintiff to be arrested in an unreasonable manner, in violation of his rights under the Fourth Amendment of the United States Constitution, <u>id</u>. at ¶ 10, causing him emotional distress.  <u>Id</u>. at ¶ 11.

The defendant has moved to dismiss the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, claiming entitlement to qualified immunity.

## II.  Standard

When deciding a 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  Therefore, the plaintiff "is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." <u>McKenna v. Wright</u>, 386 F.3d 432, 436 (2d Cir.

2

2004).  A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513-14 (2002); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Although qualified immunity is an affirmative defense, generally raised in an answer, it affords "an immunity from suit rather than a mere defense to liability," which "is effectively lost if a case is erroneously permitted to go to trial." Saucier v. Katz, 533 U.S. 194, 201 (2001); see also McKenna, 386 F.3d at 435.  Accordingly, qualified immunity issues must be resolved at the "earliest possible stage in litigation."  Id.

## III. Discussion

Defendant argues that the nighttime entry into the plaintiff's home to serve a misdemeanor arrest warrant does not constitute a Fourth Amendment violation notwithstanding the absence of any exigent circumstances.  Defendant contends that the principal protection against unreasonable intrusions into private dwellings is the warrant requirement imposed by the

Fourth Amendment on agents of the state who seek to enter the home for purposes of search or arrest.  Therefore, defendant argues, if an officer obtained a warrant, he or she may enter the home for the purposes of executing that arrest, and nothing in the established precedent constitutionally limits a police officer's authority to effect a misdemeanor arrest to daylight hours, or otherwise requires exigent circumstances in order to execute a valid warrant in a suspect's home during the nighttime hours.

In opposition, the plaintiff argues that a warrant does not automatically validate the officer's conduct, and that an arrest, just as a search, must be conducted reasonably.  The plaintiff has alleged that "his residence was a fixed one where he could be located with ease at any time," Compl. at ¶ 9, and that his charge is minor, and thus claims that it was unreasonable for the officers to arrest him as they did under the circumstances.  On the issue of qualified immunity, plaintiff argues that this Fourth Amendment violation may be deemed clearly established on grounds of obviousness even in the absence of directly applicable caselaw.

**A.   Constitutionality of Nighttime Execution of Misdemeanor Arrest Warrant**

In considering a motion to dismiss on qualified immunity grounds, the Court is required to consider this threshold question: "Taken in the light most favorable to the party

asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier</u>, 533 U.S. at 201.

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and persons or things to be seized." U.S. Const. Amend. IV.  The Fourth Amendment functions to limit the search-and-seizure authority of law enforcement officials to protect the privacy and personal security of individuals from oppressive police conduct.  <u>Wanger v. Bonner</u>, 621 F.2d 675, 681 (5th Cir. 1980).  Invasion of the home is the "'chief evil' to which the wording of the Fourth Amendment is directed", and thus, the courts rigorously protect privacy rights within a private residence.  <u>United States v. United States District Court</u>, 407 U.S. 297, 313 (1972); <u>see</u> <u>also</u> <u>United States v. Martinez-Fuerte</u>, 428 U.S. 543, 561 (1976) ("the sanctity of private dwellings [is] ordinarily afforded the most stringent Fourth Amendment protection."); <u>Silverman v. United States</u>, 365 U.S. 505, 511 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.").

In the face of this Fourth Amendment protection, "an arrest warrant founded on probable cause carries with it the limited authority to enter a dwelling in which the suspect lives and when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980).  The question in the case at bar is whether the officers have exceeded this "limited authority," implicit in an arrest warrant, by entering the plaintiff's home "in the middle of the night" absent exigent circumstances to execute the misdemeanor warrant.

Because the factual circumstances of Fourth Amendment cases are so diverse, "no template is likely to produce sounder results than examining the totality of circumstances in a given case; it is too hard to invent categories without giving short shrift to details that turn out to be important in a given instance, and without inflating marginal ones." United States v. Banks, 540 U.S. 31, 35 (2003) (citing Ohio v. Robinette, 519 U.S. 33, 39 (1996)) ("[W]e have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry")).  In evaluating the totality of circumstances, the Court measures the need for a particular practice against the intrusion upon personal rights of individuals protected by the Fourth Amendment.  Bell v. Wolfish, 441 U.S. 520, 558 (1979).  Factors relevant to this inquiry include "the scope of the particular intrusion, the manner in

which it is conducted, the justification for initiating it and the place in which it is conducted." Id. at 559.

In the context of this case, assessment of the totality of circumstances must account for (1) the fact that the warrant was executed at night and in the home, (2) the fact that an arrest, not merely a search, occurred, (3) the existence of any exigent circumstances, such as the nature of the crime or flight concerns and public security, and (4) the absence of any finding by a neutral magistrate of the reasonableness of a nighttime execution.

### 1.  **Nighttime Warrant Execution**

The Supreme Court has recognized the special threat to privacy resulting from nighttime home searches and arrests. See generally Coolidge v. New Hampshire, 403 U.S. 443, 477 (1971) (noting that a nighttime entry to seize the person is an "extremely serious intrusion."); Monroe v. Pape, 365 U.S. 167 (1961) (Frankfurter, J., dissenting) ("[S]earches of the dwelling house were the special object of this universal condemnation of official intrusion.  Nighttime [warrantless] search was the evil in its most obnoxious form."), overruled on other grounds, Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Jones v. United States, 357 U.S. 493 (1958) ("It is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home.").  While these cases deal with warrantless arrests

or searches or otherwise are not directly analogous, the Supreme Court's recognition of a heightened expectation of privacy at home during nighttime merits careful consideration of plaintiff's claim even in the context of a warrant arrest.

### 2.  Arrest of a Person

That this case involves an arrest rather than a search is also an important factor in assessing the reasonableness of the warrant's execution.  Because the invasion and disruption of an individual's life and privacy related to an arrest are more substantial intrusions than the "relatively minor intrusion" underlying a search of the premises, an arrest in the home under similar circumstances would be equally, if not more, unreasonable than the search.  See United States v. Reed, 572 F.2d 412, 423 (2d Cir. 1978) ("Merely being arrested is for most persons an 'awesome and frightening' experience, an invasion of considerable proportion."); United States v. Watson, 423 U.S. 411, 428 (1976) ("A search may cause only annoyance and temporary inconvenience to the law-abiding citizen, assuming a more serious dimension only when it turns up evidence of criminality.  An arrest, however, is a serious personal intrusion regardless of whether the person seized is guilty or innocent.").

### 3.  Existence of Exigent Circumstances

Cases addressing the reasonableness of nighttime execution of search warrants within the private home offer guidance for the

case at bar.  In <u>United States v. Smith</u>, 340 F. Supp. 1023 (D.
Conn. 1972), the district court granted defendant's motion to
suppress the fruits of a nighttime search of his home in
connection with a bank robbery investigation.  There, police
obtained a warrant to search defendant's home at 3:00 AM, after
arresting him for drunk driving and finding in his possession $20
bills with serial numbers from a bank that had been robbed the
day before.  <u>Id</u>. at 1028.  In the warrant applications, the
police officers stated their belief that other money from the
robbery and clothing worn by the robbers were in the defendant's
home.  <u>Id</u>. at 1029.  At 4:15 AM, while defendant was still in
custody, officers executed the search of his home, then occupied
by the defendant's wife and their small children.  <u>Id</u>. at 1030.
In evaluating whether the nighttime intrusion into defendant's
home was "reasonable," the court in <u>Smith</u> noted that because
Connecticut statutory law was silent on nighttime executions of
search warrants, it conducted its inquiry strictly in terms of
the Fourth Amendment, concluding that the search was
constitutionally unreasonable.  <u>Id</u>. at 1029.

Balancing "'the need to search against the invasion which
the search entails.'" <u>id</u>. at 1030 (quoting <u>Camara v. Municipal
Court</u>, 387 U.S. 523, 537 (1967)), the district court observed
that "[a] knock at the door is more alarming in the middle of the
night, and it is no less so because the officer knocking has a

search warrant." Id.  The court concluded that the affidavit only marginally established that the items would be at the home, and that the officers failed to establish special circumstances to justify the nighttime execution of the warrant promptly after it was issued at 3:00 AM. Id.  The defendant was already in custody, had made no telephone calls subsequent to his arrest, and, while other unknown suspects were at large, the affidavit supplied no facts to indicate that search of the home would yield evidence of the identity or whereabouts of defendant's collaborators. Id. at 1030.  The district court concluded that the added invasion of privacy of a nighttime search would be valid only if an officer showed "the magistrate a somewhat higher degree of certainty that the property to be seized is in the home than would be required for a daytime search." Id. at 1029.

In contrast, in United States v. Harris, 1998 U.S. App. LEXIS 4404, *3 (4th Cir. 1998) (unpublished), the nighttime warrant execution was found not to violate the Fourth Amendment, where the officer advised the magistrate that the search warrant issued at 2:03 AM would be executed upon receipt, id. at *3, the defendant "would not arrive home from work until the late-night or early morning hours", the defendant "had a reputation of returning early from trips to keep his movements unpredictable," and defendant's vehicle had arrived at his residence. Id. at 6. In United States v. Colonna, 360 F.3d 1169, 1176 (10th Cir.

2004), the Tenth Circuit validated a nighttime warrant execution where officers averred that they needed to make a nighttime, no-knock execution of a search warrant because the defendant had been arrested twenty-four times on various offenses and posed a threat to children in the neighborhood.  <u>Id</u>. at 1173.

The juxtaposition of <u>Smith</u>, where the warrant execution lacked exigent circumstances, and <u>Harris</u> and <u>Colonna</u>, where the existence of exigent circumstances validated the warrant executions, underscores the role of exigent circumstances in a nighttime warrant execution where there had been no authorization by a neutral magistrate or statute.[1]

**4.  Neutral Magistrate**

In <u>O'Rourke v. City of Norman</u>, 875 F.2d 1465 (10th Cir.

---

[1]Unlike nighttime warrant executions, courts have more readily approved early morning warrant executions on grounds that once officers have reason to believe that a suspect lives in a particular dwelling, they may reasonably infer that he will be home in the early morning and thus may execute a warrant at that time.  <u>See</u> <u>United States v. Terry</u>, 702 F.2d 299, 319 (2d Cir. 1983), cert. denied, 461 U.S. 931 (1983)(upholding the validity of a search warrant execution when suspect was not present in the home because officers had sufficient information to justify their belief in suspect's presence within the home and agents arrived at the apartment at 8:45 AM on a Sunday morning, "a time when they could reasonably believe that [the suspect] would be home"); <u>Tyson v. Willauer</u>, 290 F.Supp.2d 278, 285(D. Conn. 2003)(officers' attempt to execute a valid arrest warrant at suspect's former address, believing the address on the warrant was his current address, was valid because a warrant "carries with it the limited authority to enter a dwelling in which the suspect lives," and it was reasonable to conclude that the suspect would be present within the home at 6:00 AM).

<u>Terry</u> and <u>Tyson</u> do not bear on the case at bar because there is no issue as to the reasonableness of the officer's belief about the plaintiff's presence within the home.  Furthermore, reasonable belief of a suspect's presence within the home cannot validate every warrant execution, regardless of the manner in which it is carried out.  This would broaden <u>Terry</u> and <u>Tyson</u>'s discussions of the early morning warrant executions well beyond the facts of those cases.

1989), the Tenth Circuit focused on the absence of authorization by a neutral judicial officer for nighttime execution of the warrant.  There, police officers obtained a daytime bench warrant for contempt of court.[2]  Id. at 1466.  From the face of the warrant, it was obvious that "(1) the order authorized the arrest of the suspect for contempt, (2) the warrant was issued on February 22, 1983, three months prior to its execution, (3) it was not endorsed for nighttime execution; and, (4) the warrant was issued for failure to appear in a small-claims proceeding." Id.  Nonetheless, police officers entered the plaintiff's home at night to arrest the suspect, who was the plaintiff's daughter. Id. at 1467.

Tracing the history of policy aversion to nighttime searches, the Tenth Circuit discussed the historical origins of the Fourth Amendment as protection against use of the abusive general warrants in England and the writs of assistance in the Colonies.  Id. at 1472-76; Steagald v. United States, 451 U.S. 204, 220 (1981).  For example:

> In 1762, the English government, seeking to censure authors, printers and publishers of seditious and treasonable papers, namely the North Briton, issued general arrest warrants authorizing home searches. Pursuant to these 'roving commissions,' the government on the scantiest evidence arrested forty-nine printers

---

[2]The Tenth Circuit determined that in Oklahoma contempt of court was neither a felony nor a misdemeanor, but a sui generis offense.  Id. at 1472. The court noted that "[i]f it were a felony warrant, nighttime execution would have been authorized under Oklahoma law, and constitutionally valid."  Id. at 1469.

> in three days, 'even taking some from their beds in the middle of the night.' . . . Chief Justice Pratt ruled the warrants illegal. Id. (citing Huckle v. Money, 2 Wils.K.B. 206, 95 Eng.Rep. 768 (1763)).

Significantly, despite the "unbridled discretion" given to officers by General Warrants and Writs of Assistance, neither permitted nighttime execution in a home. Id. The Tenth Circuit noted that this view of unreasonableness of nighttime warrant executions has been incorporated into contemporary federal constitutional law. See id. at 1474, citing United States v. Merritt, 293 F.2d 742 (3d Cir. 1961); United States ex rel. Boyance v. Myers, 398 F.2d 896 (3d Cir. 1968)(invalidating nighttime executions of warrants where the warrant expressly limited the search to the daytime).

In this historical context of nighttime searches, the Tenth Circuit held that under the Fourth Amendment "a police officer does not have unbridled authority under a warrant – it is for an impartial judge to decide what is reasonable. A fortiori it is for an impartial judge to decide the reasonableness of a nighttime search in a home." Id. at 1475.[3]

---

[3]A heightened standard for nighttime searches is mandated by statute or court rule in 23 states, while 14 states explicitly authorize execution at any time, and the remaining 13 states like Connecticut have no pertinent provision. Wayne R. LaFave, Search and Seizure § 4.7 at 650 (4th ed. 2004) (citing Model Code of Pre-Arraignment Procedure 512 (1975)) (footnote omitted). Under federal law, Fed. R. Crim. P. 41(a) requires warrants to be served in the daytime unless the issuing authority finds reasonable cause for execution at night.

Interestingly, even the federal drug trafficking statute's provisions relating to searches for controlled substances requires judicial satisfaction that probable cause exists both for the warrant and for its service at the time sought.  See 21 U.S.C. § 879(a).[4]  While the Supreme Court has interpreted this statute to "require[] no special showing for a nighttime search, other than a showing that the contraband is likely to be on the property or person to be searched at that time," Gooding v. United States, 416 U.S. 430, 458 (1974), several subsequent cases have held that the need for a nighttime search must be shown for a particular search under the statute to survive Fourth Amendment scrutiny.  See United States v. Tucker, 313 F.3d 1259, 1265 (10th Cir. 2002) (the significant risk of destruction of the evidence, as well as risk of personal injuries and property damage due to the volatile nature of the chemicals and the process of methamphetamine manufacture justified execution of a search warrant at night); United States v. Keene, 915 F.2d 1169, 1168 (8th Cir. 1990)(probable cause to believe that controlled substances would be found on the premises and that the defendant

---

[4] The Controlled Substances Act governs searches for controlled substances, is codified in 21 U.S.C. § 879(a), and states in relevant part: "§ 879. Search warrants.  A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time."

had grown suspicious after the informant's visit made the prompt
nighttime execution of the warrant reasonable).

The absence of any statutory regulation of nighttime warrant
execution in Connecticut is significant to the Fourth Amendment
inquiry, because no neutral magistrate will have made any
determination bearing on the reasonableness of a nighttime
misdemeanor warrant execution, and the enhanced discretion
afforded to law enforcement authorities in these circumstances
merits particular scrutiny under the Fourth Amendment.

**5. Cipes' Arrest**

At this stage, the Court considers only the allegations in
plaintiff's complaint and the arrest warrant and application
incorporated by reference in considering whether the nighttime
misdemeanor warrant execution was reasonable.  The underlying
misdemeanors for which the arrest warrant had been issued do not
on their face provide officers with particular justification to
enter into the plaintiff's home late at night.  The warrant
application recites only that the plaintiff failed to appear for
court proceedings in the second degree criminal mischief case,
and bail was set at the low amount of $500.  The complaint
alleges that the officers knew that Cipes could be found "with
ease at any time" in his mother's home, where he had resided for
a number of years, obviating the need for officers to execute a
nighttime misdemeanor arrest when he could have been found as

15

well in the residence during early morning or daytime hours.
Viewed in the light most favorable to the plaintiff, no exigent
circumstances existed for execution of the warrant in the middle
of the night, and at oral argument, defendant agreed that his
motion should be considered in that context.  Because plaintiff's
misdemeanor arrest could have been effected equally during the
daylight hours, because there was no public safety or absconding
risk, the heightened privacy interests of an individual at home
at night outweighs the presumptive reasonableness of the arrest
conferred by the warrant, rendering the seizure unreasonable
under the Fourth Amendment.

**B.   Is Fourth Amendment law governing nighttime arrests
        clearly established?**

Having found the defendant's conduct as alleged to be
unconstitutional, the next inquiry is whether the law was
"clearly established," which must be determined in the specific
context of the case, not as a broad, general proposition.
Saucier, 533 U.S. at 201.  This two step process required for
application of the doctrine of qualified immunity "serves to
advance understanding of the law and to allow officers to avoid
the burden of trial if qualified immunity is applicable."  Id.

The defendant points to the absence of any controlling case
in which it has been held unreasonable to serve a misdemeanor
warrant on a suspect at night, while plaintiff argues that the
qualified immunity test is not limited to whether a case

16

specifically addresses the facts of the case at bar, otherwise
"public officers [could] commit statutory violations so
outlandish that they never have been the subject of a published
appellate decision."  Pl. Mem. in Opp. [Doc # 16] at 5.  In some
rare cases where the constitutional violation is patently
obvious, plaintiff argues, it is unnecessary to identify judicial
precedent to defeat qualified immunity.  Plaintiff contends that
midnight warrant executions are "so rare" that this is such a
case.  The Court disagrees.

        A particular right is clearly established as of a particular
time if: (i) "the right at issue was defined with reasonable
clarity; (ii) . . . the Supreme Court or the Second Circuit had
affirmed the existence of the right; and (iii) . . . reasonable
police officers in the defendants' position would have understood
from the existing law that their conduct was unlawful." Townes v.
The City of New York, 176 F.3d 138, 144 (2d Cir. 1999) (citing
Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998)).  In
the absence of binding precedent, the right may still be clearly
established if "the contours of the right [are] sufficiently
clear that a reasonable official would understand that what he is
doing violates the right . . . in light of the pre-existing law
the unlawfulness must be apparent." Id. (quoting Anderson v.
Creighton, 483 U.S. 635, 640 (1987)).  The "salient question" is
"whether the state of law [at the time of the incident] gave

17

respondents fair warning" that their conduct was unconstitutional.  Hope v. Pelzer, 536 U.S. 730, 741 (2002).

         Law is not "clearly established" for purposes of qualified immunity by district court opinions, but by the decisions of circuit courts or the Supreme Court.  Hawkins v. Steinqut, 829 F.2d 317, 321 (2d Cir. 1987) ("[A] district court decision does not 'clearly establish' the law even of its own circuit, much less that of other circuits. Although district judges within a particular circuit will frequently find each other's opinions persuasive, they remain free to disagree.").

         Applying this standard, the Supreme Court in Hope held that Alabama Department of Corrections' (ADOC) practice of shackling disruptive inmates to a hitching post for several hours violated a clearly established Eighth Amendment right, "in light of binding Eleventh Circuit precedent (which identified analogous "handcuffing inmates to the fence and to cells for long periods of time" as among the practices violative of the Eighth Amendment), an Alabama Department of Corrections regulation, and a DOJ report informing the ADOC of the constitutional infirmity in its use of the hitching post.  Hope, 536 U.S. at 741-42. While ultimately not relying on its own Eighth Amendment precedents prohibiting the unnecessary and wanton infliction of pain, the Supreme Court noted that:

> The obvious cruelty inherent in this practice should have
> provided respondents with some notice that their alleged

18

conduct violated Hope's constitutional protection against cruel and unusual punishment. Hope was treated in a way antithetical to human dignity — he was hitched to a post for an extended period of time in a position that was painful, and under circumstances that were both degrading and dangerous.

Id. at 745.

The violation alleged here clearly is not as obviously unconstitutional as the use of the hitching post in Hope. While police "rousting" Cipes out of bed may have been frightening and degrading, it comes nowhere near the egregious conduct of the guards in Hope, which subjected the inmate to physical pain and extreme loss of dignity for hours. Moreover, the law applicable to this case is far from "clearly established." No Supreme Court or Second Circuit case exists which presents a circumstance similar or analogous to a nighttime execution of a misdemeanor arrest warrant with no exigent circumstances and no statutory or regulatory restrictions. Nor can it be concluded that reasonable police officers in defendant's position would have clearly understood from the existing law that their conduct was unlawful. In the absence of any controlling caselaw bearing on similar circumstances so as to have framed this issue with sufficient precision to put reasonable law enforcement officials on notice of the constitutional infirmity of such a nighttime misdemeanor warrant execution, the defendant is entitled to qualified immunity.

19

**IV.   Conclusion**

     For the foregoing reasons, defendant's motion to dismiss [Doc. # 13] is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
_____
                                               Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 29th day of August, 2005.**

_____